**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

**TONY CORN,**

   **Plaintiff,**

**v.**

**DOLGENCORP, LLC,**

   **Defendant.**

**CIVIL ACTION FILE**

**No. 4:22-CV-103-SCJ**

## ORDER

This matter appears before the Court on Defendant's Motion for Summary Judgment (Doc. No. [30]).[1] Plaintiff responded in opposition (Doc. No. [34]), and Plaintiff replied in support (Doc. No. [37]). This matter is now ripe for review.

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

## I.    BACKGROUND

The Court derives the facts from Defendants' Statement of Material Facts and the Court's review of the record and determination of what facts are material. See Doc. No. [31-1] (Defendants' Brief for Summary Judgment); Doc. No. [31-2] ("DSMF"); Doc. No. [34] (Plaintiff's Response in Opposition for Motion for Summary Judgment); Doc. No. [34-5] ("Plaintiff's Response to DSMF"); Doc. No. [34-6] ("PSMF"); Doc. No. [36] ("Defendant's Response to PSMF"), and Doc. No. [37] (Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment).

The events surrounding the underlying incident are more particularly described as follows.[2]

---

[2] Pursuant to Local Rule 56.1(B), when a fact is undisputed, the Court includes the fact. For the disputed facts, the Court reviews the record to determine if a dispute exists and, if so, whether the dispute is material. If the dispute is not material, the Court cites the fact and the opposing party's response. Where the dispute is material and the opposing party's response reflects the record more accurately, the Court modifies the proposed fact and cites the record. The Court also rules on objections to proposed facts and excludes immaterial facts, those stated as an issue or legal conclusion, those not supported by a citation to evidence, or those that the record citation fails to support. Finally, where appropriate, the Court includes facts drawn from its review of the record.

On April 4, 2020 ("the Incident Date"), Plaintiff and his wife went to the Dollar General store in Cedartown, Georgia ("the Store"). DSMF, ¶ 1. The primary purpose of this trip was to look for candy for their grandchildren's Easter baskets. Id. Upon arriving at the Store, Plaintiff and his wife separated, and Plaintiff searched for a bathroom. DSMF, ¶ 4. While en route to the bathroom, Plaintiff encountered water on the floor and slipped and fell. DSMF ¶ 5. On the Incident Date and at the time of Plaintiff's fall, the Store's manager was mopping the floor. Doc. No. [33-1] ("Boatner Dep. Tr.") Tr. 47:8–13. On the Incident Date, the Store was mopped once a day due to COVID-19 sanitization protocols. Boatner Dep. Tr. 37:6–15.

The Stores manager testified that the Store had six folding wet floor signs, two cones, and two caution mop buckets. Boatner Dep. Tr. 44:12–13. She also testified that her "goal [when mopping] [wa]s to put the sign where it would be as visible to the customers in all directions as possible, so I would choose the spot where it would be most visible, and I would move on, and then if that floor was dry, I would move that cone to where I was working." Id. at 44:22–45:2. Plaintiff and his wife testified that they did not see any wet floor signs or anyone mopping before the fall. DSMF ¶ 9; Doc. Nos. [32-1] ("T. Corn Dep.

3

Tr.") Tr. 117:4–10; [32-2] ("B. Corn Dep. Tr.") Tr. 14:22–24. The Store's manager also agreed that she did not see any wet floor signs on the Store's camera footage ("CCTV Footage"), documenting Plaintiff's path through the Store preceding his fall. Boatner Dep. Tr. 75:6–20.

Water is visible on the floor from the CCTV Footage. Doc. No. [32-1] ("T. Corn Dep. Tr.") Tr. 102:6–15; 104:5–12. Plaintiff testified that nothing obstructed his view of the floor and that there were no issues with the Store's lighting on the Incident Date. DSMF ¶¶ 11–12. Plaintiff also testified that he never looked down at the floor. DSMF ¶ 13.

Plaintiff alleges that he suffered a severe left knee injury, fractured his right wrist, and sustained a neck injury. Doc. No. [1-1], ¶ 15; T. Corn Dep. Tr. 79:16–20; 86:6–7.

Plaintiff then brought suit against Dollar General for his injuries under the theories of premises liability, vicarious liability, and negligent training and supervision. Doc. No. [1-1]. Defendant moved for summary judgment. Doc. No. [30-1].

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

A factual dispute is genuine if the evidence allows a reasonable jury to find the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'— that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light

5

most favorable to the party opposing the motion. <u>Johnson v. Clifton</u>, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The court should resolve all reasonable doubts in the non-movant's favor. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). In addition, the court must "avoid weighing conflicting evidence or making credibility determinations." <u>Stewart v. Booker T. Washington Ins.</u>, 232 F.3d 844, 848 (11th Cir. 2000). When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine dispute for trial. <u>Fitzpatrick</u>, 2 F.3d at 1115 (citations omitted).

### A.    **Premises Liability**

To recover on a premises liability theory under Georgia law, a plaintiff-invitee must show that she was injured by a hazard on the defendant-landowner's premises that the defendant "should have removed in the exercise of ordinary care for the safety of the invited public." <u>Am. Multi-Cinema, Inc. v.</u>

6

<u>Brown</u>, 285 Ga. 442, 444, 679 S.E.2d 25, 27 (2009). A plaintiff must plead and prove two elements in a "slip and fall" action: "(1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." <u>Id.</u> (citations omitted); <u>see also</u> <u>Haskins v. Piggly Wiggly S., Inc.</u>, 230 Ga. App. 350, 351, 496 S.E.2d 471, 473 (1998) (stating that "the true ground of liability is the owner or occupier's superior knowledge of the hazard and the danger therefrom").

### 1.    *Defendant's Knowledge*

If a defendant lacks actual knowledge of the hazard, the plaintiff can establish constructive knowledge by showing that either: (1) an employee was in the immediate vicinity of the hazard and could easily have seen and removed the substance; or (2) the alleged hazard was present for such a length of time that it would have been discovered had the owner exercised reasonable care in inspecting the premises. <u>Ingles Mkts., Inc. v. Rhodes</u>, 340 Ga. App. 769, 771, 789 S.E.2d 340, 342–43 (2017).

7

### 2.    *Plaintiff's Exercise of Care*

In exercising ordinary care, a plaintiff-invitee must use all of her senses to discover and avoid those things that might cause her harm. Robinson v. Kroger Co., 268 Ga. 735, 741, 493 S.E.2d 403, 406 (1997). However, the invitee is not required to "visually inspect each footfall [and] look continuously at the floor for defects." Id. at 743, 493 S.E.2d at 410. An "invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe for the invitee and continues to exercise such care while the invitee remains on the premises." Id. at 743, 493 S.E.2d at 411.

## III.    ANALYSIS

The Court denies Defendant's Motion for Summary Judgment (Doc. No. [30]).

### A.    Vicarious Liability and Negligent Hiring and Training Claims

Plaintiff's Complaint alleges three different causes of action (1) premises liability, (2) vicarious liability, and (3) negligent hiring and training. Doc. No. [1-1]. Defendant states that it is moving for summary judgment on all of the claim (Doc. No. [30-1], 2); however, all of Defendant's arguments in its Motion

8

relate to the premises liability claim and make no reference to the vicarious liability or negligence claims.

At summary judgment, the movant's initial burden consists of a "responsibility to inform the . . . court of the basis for its motion" and to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting <u>Celotex</u>, 477 U.S. 323). Further, absent notice and time to respond, the Court cannot grant summary judgment on a claim not moved upon. Fed. R. Civ. P. 56(f)(2). Thus, despite Defendant's statement that Plaintiff's "claims fail as a matter of law and Defendant is entitled to summary judgment in its favor," Doc. No. [30-1], 2, the Court concludes Defendant has not properly moved for summary judgment on Counts II and III (vicarious liability and negligent training and supervision). Accordingly, summary judgment is denied regarding Counts II and III of Plaintiff's Complaint.

### B.    <u>Premises Liability Claims</u>

The Court also finds that Defendant is not entitled to summary judgment.

9

### 1.    *Duty of Care Owed to Plaintiff*

The Court finds that as a matter of law, Plaintiff was an invitee, and Defendant owed him the duty of ordinary care. Defendant argued that Plaintiff was a licensee and it owed him a lesser duty of care. Doc. No. [30-1], 6–9. The legal duty of care owed by a landowner to a person coming upon the property varies and is fixed according to the legal status of the person entering the premises." Scott v. Forest Acres Full Gospel Church, 352 Ga. App. 145, 148, 834 S.E. 2d 286, 289 (2019). Under Georgia law,"[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. "A licensee, on the other hand, is a person who is neither a customer, a servant, nor a trespasser, who does not stand in any contractual relation with the landowner, and who is permitted to go on the premises merely for her own interests, convenience, or gratification." Stanton v. Griffin, 361 Ga. App. 205, 206, 863 S.E.2d 548, 551 (2021).

The Georgia Court of Appeals has two competing lines of case law regarding whether all entrants to a retail establishment are invitees. Under

Howard v. Gram Corp, 268 Ga. App. 466, 469, 602 S.E. 2d 241, 244 (2004), "such retail establishment [that] sell[] goods to all comers, any person entering the premises occupies the status of invitee;" see also Burrow v. K-Mart Corp., 166 Ga. App. 284, 286, 304 S.E. 2d 460 (1983) ("'a corporation engaged in the retail mercantile business impliedly extends an invitation to the public to trade there.'"). Meanwhile, there is a competing line of cases where the Georgia Court of Appeals has found that all individuals that enter a commercial or retail establishment are not automatically invitees. Todd v. Byrd, 283 Ga. App. 37, 40 640 S.E. 2d 652, 656–57 (2006), overruled on other grounds by Ferrell v. Mikula, 295 Ga. App. 326, 333, 672 S.E. 2d 7, 13 (2008)) (holding that a nine-year-old child was not an invitee because she only entered the retail establishment to use the restroom).

Although there seems to be some disagreement in the case law, it is established that "in the commercial context, the customer of a business is typically an invitee of the business owner, and our courts generally have agreed that a guest or companion of a customer may also be considered an invitee on business premises, even though the guest has no business relationship with the owner or proprietor." Cham v. ECI Mgmt. Corp., 311 Ga. 170, --- 856 S.E.2d 267,

276 n.13 (2021), reconsideration denied (Mar. 30, 2021) (collecting cases). It is undisputed that Plaintiff and his wife decided to go to the Store and went there together. DSMF ¶ 1. Thus, as a companion to the Store's customer, he is an invitee.

The Court finds that the cases cited by Defendant are inapposite. In Restaura, Inc. v. Singleton, 216 Ga. App. 887, 456 S.E.2d 2119 (1995), there was no evidence in the record that the plaintiff provided any present business relation with the defendants because there was no evidence that she visited or had any intention to visit either Greyhound Food Management or Burger King. Id. 216 Ga. App. at 887–88, 456 S.E.2d at 220. Rather, the record evidence showed that she was on the premises because of her husband's travel. Id.

The case sub judice is readily distinguishable from the Restaura because Plaintiff accompanied his wife, who was indisputably the Store's customer. DSMF ¶ 1. It is undisputed that Plaintiff's wife went to the Store to purchase supplies for her grandchildren's Easter baskets. Id. And it is undisputed that she purchased items at the Store. Id. at ¶ 15. In Restaura, there was no evidence that the plaintiff or her husband had any business with the defendants or ever intended to engage in business with the defendants. Restuara, 216 Ga. App. at

12

888, 456 S.E. 2d at 220. The evidence in <u>Restaura</u> showed that the plaintiff's presence on the defendant's property was a by-product of a business transaction with a third party. <u>Id.</u> Because Plaintiff was, at a minimum, accompanying his wife while she shopped at the Store, the Court finds that <u>Restaura</u> is inapplicable.

Similarly, the Court finds that <u>Todd</u> is inapplicable. In <u>Todd</u>, the evidence in the record showed that the child was shopping with her mother in the Goodwill store next door to the defendant's store. <u>Todd</u>, 283 Ga. App. at 38, 640 S.E. 2d at 655–56. The Goodwill did not have a working bathroom, so the child went to the defendant's store for the sole purpose of using the bathroom. <u>Id.</u> at 38–39, 640 S.E. 2d at 656. The court noted the child "went into [the store] for the sole purpose of using its bathroom." <u>Id.</u> at 38, 640 S.E. 2d at 655–56. There was no evidence that the child was accompanying anyone shopping at the store.

In the case *sub judice*, there is Record evidence that Plaintiff accompanied his wife to the Store, and his wife was the Store's customer. DSMF ¶¶ 1, 15. Although there is also evidence that Plaintiff used the Store's bathroom, neither the Record nor the statements of material facts support the conclusion that Plaintiff and his wifes' sole reason for being in the Store was to use the

13

bathroom. In fact, there is Record evidence that Plaintiff was in the Store both to accompany his wife and perused the Store's produce section. DSMF ¶ 1, T. Corn Dep. 16:3–5. Thus, the Court finds that <u>Todd</u>'s determination that the child was a licensee because her sole purpose for entering the store was to use the restroom is inapplicable.

Accordingly, the Court finds that Plaintiff was an invitee. It is undisputed that Plaintiff accompanied his wife to the Store, and his wife was the Store's customer. DSMF ¶¶ 1, 15. Under Georgia law, individuals accompanying customers to commercial establishments are generally considered invitees. <u>Cham</u>, 856 S.E.2d 267, 276 n.13. Thus, Plaintiff was an invitee.

### 2. *Merits of Plaintiff's Premises Liability Claim*

To prove a premises liability claim, an invitee must show:

> (1) that the defendant had actual or constructive knowledge of the hazard; and (2) plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions within the control of the owner/occupier . . . . The true ground of liability is the owner or occupier's superior knowledge of the hazard and the danger therefrom.

14

Johnson v. LT Energy, LLC, --- S.E. 2d ----, A23A0240, 2023 WL 4194502, at 2 (Ga. Ct. App., June 27, 2023) (quoting Cottingham v. Sapp, 344 Ga. App. 651, 652, 811 S.E. 2d 422, (2018)).

A "plaintiff does not shoulder the burden of proof concerning the second prong until the defendant establishes negligence on the part of the plaintiff, i.e., that the plaintiff intentionally and unreasonably exposed himself to a hazard of which he knew or, in the exercise of ordinary care, should have known." Karesh v. Krystal Co., No. 1:05-cv-3296-TCB, 2007 WL 9701667, at *2 (N.D. Ga. June 6, 2007) (citing Robinson, 268 Ga. at 749, 493 S.E. 2d at 414).

### a)    Defendant's knowledge of the hazard

The Court finds that Defendants had actual knowledge of the hazard. The Store's manager testified that she was continuously mopping on the Incident Date and trying to finish the task before noon. Boatner Dep. Tr. 47:10–13. Additionally, the Incident Report, which the Store's manager completed, states that Plaintiff "slipped in water where manager had mopped." Doc. Nos. [34-3], 1; Boatner Dep. Tr. 46:18–20. It is undisputed that "[w]hile in route to the bathroom, Plaintiff encountered mop water and slipped and fell." DSMF ¶ 5. And there is no material dispute of fact that the Store's manager placed wet

floor signs throughout the Store. DSMF ¶ 6.[3]  The Court finds no material dispute of facts as to whether a Store employee was aware of the wet floor hazard. See, e.g., Karesh, 2007 WL 9701667, at *3 (finding defendant had actual knowledge of the hazard because the employee was engaging in routine mopping in the course of his employment).

### b)   Plaintiff's exercise of ordinary care

The Court finds that Defendant is not entitled to summary judgment on whether Plaintiff failed to exercise ordinary care. First, the Court finds that ordinary care does not require Plaintiff to inspect the floor constantly. Second, ordinary care does not require Plaintiff to wear his glasses. Finally, there is a

---

[3] Plaintiff disputes that the Record supports that all of the wet floor signs were on the floor and the position of the wet floor signs throughout the Store. Doc. No. [34-5], ¶ 6. The Court sustains in part and overrules in part the objection. Having reviewed the citations to the Record, the Store's manager testified that the Store had six folding wet floor signs, two cones, and two caution mop buckets. Boatner Dep. Tr. 44:10–12. The Store's manager testified that all of the wet floor signs were out. Id. at 109:4–8. The Court overrules the objection as it relates to the six folding wet floor signs. The Court sustains the objection as it relates to the two cones and the two caution mop buckets. The Court also overrules the objection as it relates to the position of the wet floor signs in the Store. The factual assertion does not mention the position of the wet floor signs, only that they were on the floor.

material dispute of fact as to whether the placement of the wet floor signs should have alerted Plaintiff to the hazard.

### (1)    Inspecting the floor

Defendant argues that Plaintiff did not exercise ordinary care because he did not look at the floor in the Store. Doc. No. [30-1], 11–12. The evidence in the Record establishes that the Store was adequately lit, nothing blocked his view of the floor, and that water was visible on the floor. Id. at 12 (citing Corn Dep. 100:10–23; 102:18–19; 104:3–12). Thus, Defendant argues that Plaintiff's failure to look at the floor demonstrates a lack of ordinary care. Doc. No. [30-1], 11–12.

Georgia courts have routinely held that plaintiffs are "not required, in all circumstances, to look continuously at the floor, without intermission, for defects in the floor." Robinson, 268 Ga. at 741, 493 S.E. 2d at 409; Food Giant v. Cooke, 186 Ga. App. 253, 257, 366 S.E.2d 781, 784 (1988) ("The mere fact that appellee was not looking ahead does not demand a finding that she was not exercising ordinary care for her own safety."); Fletcher v. Family Center, 169 Ga. App. 376, 377, 312 S.E.2d 856, 857 (1983) (holding that plaintiff could not be barred from recovery as a matter of law merely because she was not looking at the floor before she fell). Because a plaintiff is not required to inspect and look

down at the floor continuously, the fact that Plaintiff admits that he was not looking at the floor but was "focused on going down the hallway" is insufficient to render summary judgment. Doc. No. [32-1] (Plaintiff Deposition), Tr. 110; Robinson, 268 Ga. at 743; 493 S.E.2d at 410.

### (2)    *Plaintiff's glasses*

The Court finds that Plaintiff's decision not to wear glasses did not constitute a lack of ordinary care. "[T]he plaintiff must at all times use ordinary care for [his] own safety; . . . and second, the plaintiff must use ordinary care to avoid the consequences of the defendant's negligence when it is apparent or when in the exercise of ordinary care it should become apparent." Richey v. Kroger Co., 355 Ga. App. 551, 552–53, 845 S.E. 2d 351, 353 (2020). Defendant argues that Plaintiff was not exercising ordinary care for his own safety because he neglected to wear his prescription glasses on the Incident Date. Doc. No. [30-1], 13. Plaintiff responded by providing an affidavit swearing that he only needs glasses to "read fine print." Doc. No. [34-4], ¶ 4. Defendant replied, arguing that the Court should disregard Plaintiff's affidavit because it contradicts his deposition testimony. Doc. No. [37], 7.

18

The relevant deposition testimony is as follows: "Q: And you were not wearing glasses that day, you said?/A: No. These are just reading glasses./ Q: Right. But you have prescription glasses?/ A: I have prescription glasses." T. Corn Dep. Tr. 108:24–109:3. In his affidavit, Plaintiff testified, "[i]n my deposition, I testified to not wearing glasses on the date of the fall. I hereby state that I only need glasses to read fine print." Doc. No. [34-4], ¶¶ 4–5. The Court finds that Plaintiff's affidavit does not contradict his deposition testimony and therefore need not disregard the affidavit testimony.

Courts hold that when a party gives self-contradictory testimony, the court must construe the favorable testimony in favor of the non-contradictory party. Prophecy Corp. v. Charles Rossignol, 256 Ga. 27, 28, 343 S.E.2d 680, 682 (1986). Whether or not there is contradictory evidence is a question for the judge, and at least one part of the testimony must assert the opposite of another part. Id. 256 Ga. at 31, 343 S.E.2d at 684. The burden rests upon the contradicting party to provide a reasonable explanation for the difference, shifting the favor back to Plaintiff for summary judgment on that testimony. Id.

Plaintiff's deposition and his affidavit are not contradictory. At the deposition, Plaintiff testified that he was wearing his "reading glasses," he has

"prescription glasses" (Doc. No. [32-1], Tr. 109), and that he has "[old] regular glasses at home." Doc No. [32-1], Tr. 86. Plaintiff then clarified in a later produced affidavit that he only needs glasses to read fine print. Doc No. [34-4], ¶ 4.

Plaintiff's testimony here gives additional context to the type of glasses he wears, which is not contradictory.

> To constitute a self-contradiction it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an *inconsistency* that is required. As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the whole impression or effect of what has been said or done.

Hightower v. State, 227 Ga. App. 74, 77, 487 S.E.2d 646, 650 (1997). "[T]he facts omitted from the earlier statements and testimony do not cause a conflict with the latter testimony; such testimony is merely fuller, more expansive, and complete"; thus, the trial court was not required to exclude the later filed affidavit. Smith v. Vencare, Inc., 238 Ga. App. 621, 624, 519 S.E.2d 735, 740 (1999). At the deposition, Plaintiff was not asked whether he was farsighted or nearsighted or why he needed prescription glasses; Defendant only asked whether Plaintiff had prescription glasses. T. Corn Dep. Tr. 108:24–109:3. The

20

Court finds that the affidavit testimony about Plaintiff's eyesight and the type of glasses he wears is fuller, more expansive, and a complete description of his prescription glasses. Smith, 238 Ga. App. at 624, 519 S.E.2d at 740.

Compare Bradley v. Winn Dixie Stores, Inc., 314 Ga. App. 556, 558, 724 S.E.2d 855, 858 (2012) (finding that the affidavit stating that the employee was "facing the side" of the plaintiff did not contradict the earlier testimony that the employee was "facing" the plaintiff because "it is [not] absolutely impossible" that both could be true.); Price v. Thapa, 323 Ga. App. 638, 640, 7445 S.E.2d 311, 315 (2013) (holding that the plaintiff's testimony about seeing vehicles run a stop sign did not conflict with the affidavit about not seeing but inferring it from the resulting car crash.). With Prophecy, 256 Ga. at 31, 343 S.E.2d at 684, (holding witnesses affidavit statement recalling the timing of a particular conversation contradicted the earlier deposition testimony where he did not recall when a conversation occurred.)

It is possible to read Plaintiff's deposition and affidavit testimony as consistent. The statement that Plaintiff had regular glasses at home could refer to reading glasses. Thus, the Court need not disregard Plaintiff's affidavit, nor does the deposition testimony plainly show that Plaintiff did not exercise

21

ordinary care. Thus, the Court finds that Defendant is not entitled to summary judgment because Plaintiff was not wearing his glasses. See Aggeles v. Theater of the Stars, 227 Ga. App. 227, 230, 488 S.E.2d 724, 727 (1997) (McMurray, J., dissenting) (opposing the majority's ruling on summary judgment, in part because the plaintiff not wearing her reading glasses did not affect her ability to see when determining plaintiff's exercise of care) rev'd on other grounds, 235 Ga. App. 57, 507 S.E.2d 856 (1998).[4]

### (3)    Caution sign placement

The Court finds a material dispute of fact as to whether the caution floor signs were placed in a manner that alerted Plaintiff to the hazard. The Georgia Court of Appeals has developed a framework for determining whether a plaintiff has constructive knowledge of the hazard. In Debardelaben v. Showbiz Pizza Time, 231 Ga. App. 171, 172, 498 S.E.2d 764, 766 (1998), the court held that

_____

[4] The case got remanded and then reversed in a subsequent case Aggeles v. Theater of Stars, 235 Ga. App. 57, 507 S.E.2d 856 (1998) (holding summary judgment was not appropriate), but the subsequent case does not mention the relevant fact detailed in the dissent of the prior case. However, taken together, the court ruled that it cannot, as a matter of law, conclude that the plaintiff failed to exercise due care by not wearing her reading glasses.

22

summary judgment was inappropriate when there was a dispute about whether a warning sign was present on the plaintiff's path to the fall site. Id.; see also Turner., 282 Ga. App. at 123, 637 S.E.2d at 741 (holding that summary judgment should not be granted where there is a factual dispute about the number of signs placed and whether they were on the plaintiff's path to the fall site).

Similarly, in Sutton v. Winn Dixie Stores, 233 Ga. App. 424, 427, 504 S.E.2d 245, 249 (1998), the court found that summary judgment was inappropriate when the plaintiff only saw the caution sign after her fall, even though the caution sign was approximately three feet away. Id. at 428, 504 S.E.2d at 249; see also Karesh, 2007 WL 9701667, at *7 (holding that summary judgment was inappropriate when a caution sign was placed across the room in such a way that neither the plaintiff, the plaintiff's wife, nor the paramedics saw the sign) (citing Smith v. Se. Fid. Ins. Co., 258 Ga. 15, 16, 365 S.E.2d 105, 107 (1988)).

Conversely, the courts that granted summary judgment all found that the signs were placed so that the plaintiff should have seen them. In Alterman Foods v. Munford, 178 Ga. App. 214, 215, 342 S.E.2d 480, 481, the court found that summary judgment was appropriate when the store placed a caution sign

23

immediately in front of the entrance six feet away from the fall because the plaintiff had to walk past the caution sign, thereby giving him constructive notice of the hazard. See also Taylor & Mathis v. Doyle, 219 Ga. App. 445, 446, 465 S.E.2d 484, 485 (1995) (ruling that summary judgment was appropriate when the caution sign was "in plain view of anyone who left the elevators" and the plaintiff fell after exiting the elevator); Adams v. Winn-Dixie Stores, 192 Ga. App. 892, 893, 386, S.E.2d 686, 687 (1989) (ruling summary judgment was appropriate when a caution sign was at the entry of the store and noting that the plaintiff was not prevented or distracted from seeing it due to some other condition); Perkins v. Compass Group USA, Inc., 512 F. Supp. 2d 1296, 1306 (N.D. Ga. 2007) (holding that summary judgment was appropriate when the defendant placed a warning sign between two hallways "so that the sign would be visible from either direction"); Ogletree v. Quiktrip Corp., No. 1:20-CV-1201-AT, 2021 WL 9763364, at *2, 7 (N.D. Ga. Aug. 12, 2021) (holding summary judgment was appropriate because the plaintiff walked past a wet floor sign at the entrance of the store).

Like in Sutton, Turner, and Karesh, where the plaintiffs did not encounter any wet floor signs on their path to the fall site, Plaintiff and Plaintiff's wife

both testified that they did not encounter any wet floor signs while they were in the store prior to Plaintiff's fall. T. Corn Dep. Tr. 117:4–10; B. Corn Dep. Tr. 14:22–24. The Store's manager also testified that the CCTV Footage did not capture the entire Store and showed no wet sign floors on Plaintiff's path. Boatner Dep. Tr. 75: 6–20.

Unlike in <u>Munford</u>, <u>Taylor & Mathis</u>, <u>Adams</u>, and <u>Ogletree</u>, where a wet floor sign was placed so that the plaintiffs must have encountered it before their falls, there is no plain, palpable, and undisputed evidence that Plaintiff encountered a wet floor sign any time before his fall. <u>Id.</u> Summary judgment is inappropriate in this case, like in <u>Debardelaben</u>, because there was a dispute about the exact location of the wet floor signs, and the manager cannot definitively attest to where she had placed the signs in relation to Plaintiff's fall. <u>Id.</u> at 61. Thus, Defendant is not entitled to summary judgment because there is no plain evidence that the wet floor signs were visible to Plaintiff to give him constructive knowledge of the hazard.

IV.    **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Dolgencorp's Motion for Summary Judgment. Doc. No. [30]. The Court also **DENIES** Dolgencorp's Request for Oral Argument (Doc. No. [30-3] as **MOOT**.

The Court deems this case appropriate for mediation and **ORDERS** the Parties to participate in mediation of this case before an assigned United States Magistrate Judge for the Northern District of Georgia. To this regard, the Court **REFERS** this case to Chief Magistrate Judge Russell G. Vineyard for assignment to the next available Magistrate Judge. Mediation will be scheduled at the discretion and convenience of the Magistrate Judge assigned. The Parties are **ORDERED** to file notice within **FIVE (5) DAYS** of the conclusion of mediation advising this Court of the outcome. The Parties are further **ORDERED** that, if mediation is unsuccessful, they must file their consolidated proposed pretrial order within **THIRTY (30) DAYS** of the conclusion of mediation.

**IT IS SO ORDERED** this _20th_ day of July, 2023.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

26